UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

AMANDA STEELE,                )
                              )
        Plaintiff,             )
                              )
                              )
v.                            )    No. 3:08-CV-108
                              )    (VARLAN/GUYTON)
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant.             )

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Amanda Steele seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On December 8, 2004, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of May 19, 2004. [Tr. 14]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On October 31, 2006, a hearing was held before an ALJ to review determination of Plaintiff's claim, [Tr. 325-42], and another hearing was held on May 22, 2007. [Tr.

343-59]. On August 2, 2007, the ALJ found that Plaintiff was not disabled. [Tr. 21]. The Appeals Council denied the Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I.   ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since May 19, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment: bipolar disorder with psychotic features (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 25 pounds on a frequent basis and up to 50 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, she is restricted to simple instructions and to rare interaction with the general public.

6. The claimant is capable of performing past relevant work as a factory press operator and newspaper carrier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 19, 2004 through the date of this

decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 16-21].

## II. DISABILITY ELIGIBILITY

An individual is eligible for Social Security Insurance benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson,

4

441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

The Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. Plaintiff contends the ALJ erred by disregarding: (A) the opinion of treating physician Robert K. Bachus, M.D., (B) the opinion of consulting examiner Ann Ramey, M.S., and (C) the opinion of consulting expert Alan D. Blotcky, Ph. D. [Doc. 12]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 16].

### *A.  Robert K. Bachus, M.D.*

The Plaintiff argues that the ALJ improperly disregarded the opinion of Robert K. Bachus, M.D., ("Dr. Bachus"), a treating physician, when he determined that the Plaintiff remained capable of completing work that involved no more than simple instructions and only rare interaction with the general public. [Doc. 12]. The Commissioner responds that the ALJ's decision not to give Dr. Bachus's opinion controlling weight is supported by substantial evidence because Dr. Bachus's opinion was not consistent with the record of treatment by Dr. Bachus or with other opinions in evidence. [Doc. 16].

In reviewing the evidence of record, the ALJ described Dr. Bachus's treatment of the Plaintiff as follows:

> Beginning in August 2004, the claimant came under the care of Robert Bachus, M.D., who wrote a note in November 2004, indicating that the claimant had a history of manic-depressive disease for which she had never been properly medicated. Dr. Bachus reported that the claimant was tolerating current medications well, with excellent response. He noted that he [sic] was psychiatrically stable and that he expected her to remain so. Progress notes in December 2004 indicated that the claimant was tolerating medication well, without side effects (Exhibit 10F).

5

> . . . .
> Dr. Bachus noted in May 2005 that the claimant still had intermittent paranoid delusions and that consistent employment was not realistic for her at that time. Nevertheless, he continued to describe her as stable and compliant with medication at each of the monthly medication management sessions. In July 2005, Dr. Bachus agreed to write a letter of support so that the claimant could regain custody of her daughter. Dr. Bachus observed at the time that the claimant had no symptoms and that she was compliant with medication. Records from the continuing care by Dr. Bachus indicated that the claimant remained stable on medication, without complaints or side effects, through December 2005 (Exhibit 10F).

[Tr. 17]. The ALJ then determined the weight to be accorded to Dr. Bachus's opinion by applying 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings and explained:

> As to the opinion evidence, Dr. Bachus wrote a note in May 2005, stating that the claimant could not perform consistent employment at that time. The undersigned views this as the good doctor's attempt to be helpful, since at the same time he supported the claimant's efforts to regain custody of her minor daughter, and since the medical record from Dr. Bachus at that time clearly indicated that the claimant's functioning was quite stable with medical compliance. Thus, the May 2005 note from Dr. Bachus has been given less weight than his overall progress notes, which indicated that the claimant did well on medication.

[Tr. 20].

If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927. The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler v. Heckler, 787

6

F.2d 76, 85 (2d Cir. 1986)). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ, id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting it. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant)).

7

In the present case, Dr. Bachus was the Plaintiff's treating physician, as he was the Plaintiff's own physician and had provided medical treatment as part of an ongoing treatment relationship. See 20 C.F.R. § 220.5. The Plaintiff's objection centers upon the ALJ's decision not to give controlling weight to a from entitled "Assessment of Mental Limitations," which Dr. Bachus filled out on May 31, 2005. [Tr. 273-75]. This form, supplied by counsel to the doctor, lists ten areas of mental health and then instructs the doctor to evaluate the patient's ability by marking unlimited, good, fair, poor, or none. The form specifically instructs the doctor that "[c]onclusory statements that a patient is or is not disabled usually are not enough," [Tr. 273], and leaves an area at the end of the form for the doctor to describe any medical or clinical findings that support the assessment contained in the form. [Tr. 275].

In the form, Dr. Bachus indicated that the Plaintiff had "poor" ability to: maintain concentration, persistence or pace; adapt to stressful work-related situations; deal with the public; deal with work-related stress; demonstrate reliability; work at a consistent pace for an acceptable period of time; and complete tasks commonly found in work settings. [Tr. 273-75]. Dr. Bachus opined that the Plaintiff had a fair ability to: perform activities of daily living; interact appropriately, communicate effectively, and engage in other aspects of social functioning; follow work rules; persist at assigned tasks; and relate to supervisors and co-workers. [Tr. 273-75]. In the area designated for medical and clinical findings, Dr. Bachus stated, "[The Plaintiff] suffers from intermittent paranoid delusions, and lapses from reality. Consistent employment is not a realistic goal at this point in time." [Tr. 275].

As the ALJ explained, Dr. Bachus's opinion was inconsistent with his own treatment records from the same period. In his treatment notes from May 31, 2005, the same visit on which he filled

8

out the mental assessment, Dr. Bachus noted, "[Plaintiff] presents as stable as I've seen her. Reports to daily med compliance, staying focused on remaining psychiatrically stable so [she] can eventually, regain custody of daughter. No racing or grandiose thoughts, no mood lability or [symptoms] of hypomanic. No crying spells or [suicidal ideation]." Further, as the ALJ noted, Dr. Bachus saw the Plaintiff on July 19, 2005, and at the Plaintiff's request, composed a letter in favor of her regaining custody of her daughter.[1] In his treatment notes from the visit, Dr. Bachus noted "No current [symptoms] of hypomania, psychosis, or depression." [Tr. 224].

Finally, Dr. Bachus's opinion was inconsistent with other opinion evidence from the same period. In an evaluation completed April 6, 2005, Ronald F. Kourany, M.D., ("Dr. Kourany") found that the plaintiff would be able to complete simple and low level detailed tasks and sustain persistence on repetitive, routine activities that required only limited contact with the public. [Tr. 211]. While Dr. Kourany found that the Plaintiff would need help setting realistic goals, he found that she could do so and would be able to accept supportive criticism from supervisors and coworkers [Tr. 211].

---

[1]The Plaintiff cites to a letter composed by Dr. Bachus on November 30, 2004, [Tr. 250], as the letter in support of regaining custody, and cites the content of this earlier letter as evidence against the ALJ's finding that Dr. Bachus's positions were inconsistent. It appears to the Court that in his decision the ALJ referred to a different letter as controverting Dr. Bachus's opinion. This letter was written July 19, 2005, just six weeks after the mental assessment in question. Although no copy of this letter is in the record, treatment notes from July 19, 2005, clearly indicate that it was written. [Tr. 225].

Even looking at the November 2004 letter, Dr. Bachus opines that the Plaintiff is "psychiatrically stable, and will remain so as long as she complies with her appointments and medication," which he indicates she has agreed to "continue on a daily basis indefinitely." [Tr. 250]. The Court finds this assessment to be inconsistent with an opinion that she cannot work consistently.

The Plaintiff correctly observes that in the "Treatment/Service Plan," which was agreed upon by Dr. Bachus, the Plaintiff, and a therapist and supervisor at the Peninsula Behavioral Health Center after the Plaintiff's intake visit, the Plaintiff's global assessment of functioning ("GAF") score is listed as 45. [Tr. 269]. This score was an evaluation of the Plaintiff's status prior to treatment and accurately indicates that, prior to treatment, she had serious symptoms. However, this score does not undermine the ALJ's finding that the Plaintiff's treatment was successful and was controlling her symptoms. Nor does it support Dr. Bachus's assessment that after treatment the Plaintiff remained unable to work, since this GAF score was made at the outset of and prior to any actual treatment.

Based on the foregoing, the Court concludes that the ALJ's decision to give less than controlling weight to Dr. Bachus's assessment of the Plaintiff's mental impairments is supported by substantial evidence. Dr. Bachus's opinion as to the nature and severity of the Plaintiff's impairment was not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Instead, Dr. Bachus simply stated that the Plaintiff could not work. Further, Dr. Bachus's opinion that the Plaintiff was not capable of working is inconsistent with the other substantial evidence in the case record and, most importantly, is inconsistent with his own treatment notes from the same period. For example, the day that Dr. Bachus opined that the Plaintiff could not work he also found that her compliance with her medical regime had eliminated virtually of the symptoms of which she complained. [See Tr. 224].

Notwithstanding the above analysis, the Court also notes that disability determinations are reserved for the ALJ. Blanket statements, like Dr. Bachus's statement that "[c]onsistent employment is not a realistic goal," are legal determinations which fall solely within the ALJ's domain. In the

context of Social Security, a disability determination ultimately turns upon whether work that accommodates a claimant's residual functional capacity and vocational factors exists in the national economy, not whether the claimant can resume her previous work or other work known to a physician. See Walters, 127 F.3d at 529. Thus, Dr. Bachus's opinion that the Plaintiff was disabled is inconsistent with the other evidence in record, in part, because he was not relying on the applicable legal definition of "disability." While medical observations, opinions, and treatments are well within the physician's expertise, the analysis of the claimant's legal disability falls within the ALJ's professional, legal expertise and, accordingly, the disability determination is reserved for the ALJ's judgment. See SSR 96-5p, 61 Fed. Reg 34471, 34472.

Accordingly the Court finds that the ALJ's decision to discount Dr. Bachus's opinion is supported by substantial evidence.

### B. Ann Ramey, M.S.

The Plaintiff also argues that the ALJ improperly disregarded the opinion of Ann Ramey, M.S., ("Ms. Ramey"), when he determined that the Plaintiff remained capable of completing work that involved no more than simple instructions and only rare interaction with the general public. [Doc. 12]. The Commissioner responds that the weight accorded to Ms. Ramey's opinion is supported by substantial evidence. [Doc. 16].

The ALJ summarized Ms. Ramey's consultation as follows:

> In March 2005, the claimant saw Amy [sic] Ramey, MS for a consultative examination. She provided a rambling and delusional history, describing paranoia and visual hallucinations. She reportedly saw demons in people and believed that they had the "mark of the beast." She admitted a history of marijuana and crack cocaine use until two years earlier, when she had lost custody of her daughter. She denied drug abuse since that time. On clinical examination, the claimant appeared anxious and hyper-loquacious, with diminished

11

> short-term memory. She was diagnosed with schizoaffective disorder and panic disorder and was assigned a global assessment of functioning (GAF) of 50 (Exhibit 8F).

[Tr. 17]. However, the ALJ ultimately found the Plaintiff's impairment to be less restrictive than indicated in Ms. Ramey's assessment.

When determining the weight that should be afforded to a given opinion, medical and osteopathic doctors and licensed or certified psychologists are classified as "acceptable medical sources." SSR 06-03p at *1. In contrast, nurse practitioners, physician assistants, licensed clinical social workers, and other masters level sources, like Ms. Ramey, are considered "other medical sources." Id. at *2. Only an "acceptable medical source," can be a treating source and be given controlling weight. Id. While "other medical sources" are never given controlling weight, all medical source opinions are to be evaluated by the ALJ and will be given more weight if supported by other evidence, consistent with the record as a whole, or given by a specialist in the area of inquiry. 20 C.F.R. § 404.1527(d)(3)-(5).

Ms. Ramey's clinical findings were as follows:

> Regarding ability to function in a work setting, from a mental health standpoint, her ability to understand is not impaired. Remote recall is not cognitively impaired; however, immediate recall is moderately impaired. Concentration is moderately impaired as compromised by her mental status. Persistence with task is moderately impaired. Social interactive patterns and adaption are significantly impaired.

[Tr. 193]. The ALJ's restricting the Plaintiff to work with simple instructions and rare interaction with the general public is consistent with these findings. The Plaintiff is significantly limited in her ability to interact socially, and the ALJ addressed this significant limitation by finding that her work could only require her to interact with the public on rare occasions. The ALJ's finding that the Plaintiff could only take work which gave simple instructions is consistent with Ms. Ramey's finding

12

that the Plaintiff had moderate, but not significant, limitations on her immediate recall, persistence, and concentration. While the ALJ's conclusion may not adopt Ms. Ramey's clinical findings verbatim, it included work restrictions which addressed each of the significant impairments Ms. Ramey identified and gave more than sufficient weight to Ms. Ramey's opinion, as a one-time consulting medical source.

In her report, Ms. Ramey also summarized the Plaintiff's subjective complaints of hallucinations and "panic attacks," and the Plaintiff argues that the ALJ erred by not giving proper weight to these observations. While Ms. Ramey described a number of psychotic symptoms that the Plaintiff reported, Ms. Ramey noted that during the examination that the Plaintiff, "was not grossly psychotic and denied suicidality." Ms. Ramey further noted that the Plaintiff, "admitted paranoia, but appeared to be comfortable in the evaluator's presence." [Tr. 193].

The Plaintiff's subjective complaints, as reiterated and summarized by Ms. Ramey, are not entitled to significant weight, as the ALJ found the Plaintiff not to be a credible witness or historian. In almost every sentence of Ms. Ramey's description, she notes that the Plaintiff "reportedly" or "per report" has had the symptoms which are described. [Tr. 193]. There is no indication in the record that the contents of Ms. Ramey's summary are Ms. Ramey's professional findings or are supported by objective medical evidence; instead, the contents appear to be Ms. Ramey's notations summarizing the Plaintiff's subjective complaints. In light of the Plaintiff's "past arrest for theft, her symptom magnification on the MMPI and untrue statement . . . that she had not used marijuana since 2001," the ALJ concluded that the Plaintiff was not a credible witness and had no reason to accord significant weight to the subjective complaints she made to Ms. Ramey. [Tr. 20].

Based on the foregoing, the Court finds that the weight accorded to Ms. Ramey's consultative opinion is supported by substantial evidence. The Court finds that the ALJ incorporated work restrictions which addressed the limitations identified by Ms. Ramey, despite the fact that most of the restrictions identified were only moderate. Further, the Court finds that the Plaintiff's reports of hallucinations, paranoia, and panic attacks, were properly discounted as they were the Plaintiff's subjective complaints and were not Ms. Ramey's professional, medical opinion, and the ALJ found that the Plaintiff was not a credible historian or witness.

C.      *Alan D. Blotcky, Ph. D.*

Finally, Alan D. Blotcky, Ph. D., ("Dr. Blotcky"), a medical expert, testified at the hearing before the ALJ on May 22, 2007. The Plaintiff argues that the ALJ erred by finding that Dr. Blotcky's opinion was inconsistent with the medical evidence of record and by discounting Dr. Blotcky's opinion. [Doc. 12]. The Commissioner maintains that the ALJ's decision to discount Dr. Blotcky's opinion was supported by substantial evidence because Dr. Blotcky's opinion reflected Plaintiff's unmedicated condition rather than her condition after treatment. [Doc. 16]. The Plaintiff responds that a claimant's failure to follow medical advice cannot be a substantive grounds for denying benefits unless the ALJ makes a finding under 20 C.F.R. §§ 404.1530 or 416.930 that the claimant has failed, without good cause, to follow prescribed treatment that would enable the claimant to recover from the impairment and return to work. [Doc. 17].

At the hearing, Dr. Blotcky opined that the Plaintiff met the criteria for a listed impairment contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.04. After giving this opinion, the ALJ inquired regarding the evidence of record supporting the opinion, as follows:

> Q: Okay. Tell me why – I mean, what supports your testimony here?

14

> A: Everything else in the record is consistent. Every professional that has seen her, either outpatient or inpatient, has diagnosed her with bipolar disorder, or even in one case schizoaffective disorder, which is quite similar to bipolar disorder. She's been treated outpatient, inpatient and the medications that she has been on are extremely consistent with a bipolar disorder. And in this case, her bipolar disorder includes psychotic symptoms at times. The 2007 evaluation just is not consistent with the rest of the record. I, I think the best – probably the best documentation is Dr. Backus' handwritten letter and his assessment of mental limitations form that he filled out. I believe it was in 2005. But there's quite an extensive record and it's all quite consistent except for the independent evaluation that was done in 2007.
>
> Q: Well, and I did note that Dr. – I believe this is the one you're talking about, Dr. Backus [sic] saying that she's schizophrenic, but he supports her getting her child back.
>
> A: Well, he's diagnosed her as bipolar disorder and being – having a bipolar disorder doesn't keep you from having a child.
>
> Q: Well, but I mean, but you're telling me some of the schizophrenic or psychotic symptoms that she's having–
>
> A: Right.
>
> Q: – I mean, why, if you really believe somebody had that degree of impairment, why on earth would you support them in the court system to get a child back?
>
> A: Well, I don't know, I don't know.
>
> Q: I mean, that's totally inconsistent to me. That, that just doesn't make any sense to put a child at risk –
>
> A: Yeah.

[Tr. 354].

In rejecting Dr. Blotcky's findings, the ALJ explained, "The testimony of Dr. Blotcky simply did not apply to the claimant's functioning when compliant." [Tr. 19]. Further, the ALJ found that

15

the "opinion of the medical expert at the hearing was inconsistent with the weight of the medical evidence of record, which showed clearly that the claimant's functioning was stable on medication." [Tr. 20]. As a result of these findings, the ALJ gave "little weight" to Dr. Blotcky's opinion.

In order to meet the requirements of Listing 12.04 based upon a bipolar disorder, a claimant must demonstrate, "Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04(A)(3). In addition, the claimant must show at least two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04(B).

In regards to the Plaintiff's bipolar disorder, the ALJ found, consistent with Dr. Blotcky's assessment of the record, that the Plaintiff suffered from bipolar disorder with psychotic features and found this disorder to be a severe impairment. However, in contrast to Dr. Blotcky's opinion, the ALJ found that this severe impairment did not satisfy the criteria for disability contained in Listing 12.04. In regards to 12.04(A), the Plaintiff cites emergency room visits and stays at the Mocassin Bend Mental Health Institute with complaints of severe anxiety and depression [Doc. 12 citing Tr. 156-72, 185-86, 279-80, 312-17], and the Commissioner presents no evidence to discredit this

16

evidence of episodic periods. However, assuming the criteria contained in 12.04(A) are met, the Plaintiff's illness does not meet the criteria contained in 12.04(B), and therefore, her bipolar disorder does not rise to the level of a listed impairment.

The objective medical evidence in the record supports a conclusion that the Plaintiff, at most, only meets one of these criteria, marked difficulty in maintaining social functioning. The Court again reiterates that the record of the Plaintiff's treatment with Dr. Bachus indicated that her bipolar disorder only moderately restricted her ability to complete the activities of daily living and to maintain concentration, persistence, or pace. [Tr. 273-75]. This evaluation is consistent with Ms. Ramey's opinion which found that the Plaintiff's only significant functional limitation was in her ability to interact socially. [Tr. 193]. As the Court acknowledged earlier and as the ALJ found in his decision and indicated to Dr. Blotcky when questioning him at the hearing, the position taken by Dr. Bachus in his letter and adopted by Dr. Blotcky at the hearing—that the Plaintiff could care for her young child—is a position which directly undermines finding that the Plaintiff's bipolar disorder restricts her functioning as required by Listing 12.04(B). In addition, the Plaintiff has not pointed the Court to any evidence of repeated and extended episodes of decompensation.

Because the ALJ did not make a finding under 20 C.F.R. §§ 404.1530 or 416.930 regarding the Plaintiff's non-compliance, the Court will put aside the Commissioner's argument that Dr. Blotcky's opinion addressed the Plaintiff's pre-treatment condition. In applying the criteria for disability based upon bipolar disorder contained in Listing 12.04, the Court finds that the ALJ correctly concluded that the Plaintiff did not meet the criteria contained in Listing 12.04. The medical evidence in the record has shown that the Plaintiff has marked difficulties in maintaining social functioning, 12.04(B)(2), but the evidence does not support a finding that the Plaintiff has

marked difficulties in maintaining concentration, persistence, or pace, 12.04(B)(3); has marked restriction of activities of daily living ,12.04(B)(1); or has experienced repeated and extended episodes of decomposition, 12.04(B)(4). Accordingly, the Court finds the ALJ's decision to discount Dr. Blotcky's opinion was supported by substantial evidence.

## V. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing her past relevant work as a factory press operator and newspaper carrier. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment [Docs. 11 and 12] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Docs. 15 and 16] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).